Smith, J.P., and Peradotto, J.
(dissenting). We respectfully dissent and would affirm the judgment because we disagree with the majority that Supreme Court was required to conduct *1622 a further inquiry pursuant to People v Buford (69 NY2d 290 [1987]). It is well settled that “ ‘[i]f at any time after the trial jury has been sworn and before the rendition of its verdict. . . the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case . . . the court must discharge such juror’ ” (Buford, 69 NY2d at 298, quoting CPL 270.35 [1]; see People v Mejias, 21 NY3d 73, 79 [2013], rearg denied 21 NY3d 1058 [2013]). The Court of Appeals has stated that its “intention in Buford was to create a framework by which trial courts could evaluate sworn jurors who, for some reason during the trial, may possess [ ] a state of mind which would prevent the rendering of an impartial verdict” (Mejias, 21 NY3d at 79 [internal quotation marks omitted]).
We agree with the majority that “[w]hen a sworn juror’s comments or actions raise [ ] a question concerning his or her ability to be impartial, ‘the trial court must question each allegedly unqualified juror individually in camera in the presence of the attorneys and defendant ... In a probing and tactful inquiry, the court should evaluate the nature of what the juror has seen, heard, or has acquired knowledge of, and assess its importance and its bearing on the case’ ” (People v Ruggiero, 279 AD2d 538, 538 [2001], lv denied 96 NY2d 834 [2001], quoting Buford, 69 NY2d at 299). We conclude, however, that the issue presented on this appeal is not whether the court conducted a sufficient Buford inquiry of the jurors at issue, but rather whether there was sufficient credible information indicating that any juror made a comment or engaged in an action that “raises a question concerning his or her ability to be impartial” as required to trigger a Buford inquiry of the juror (id.).
“The right to a trial by jury in criminal cases is ‘fundamental to the American scheme of justice’ and essential to a fair trial ... At the heart of this right is the need to ensure that jury deliberations are conducted in secret, and not influenced or intruded upon by outside factors” (People v Rivera, 15 NY3d 207, 211 [2010], quoting Duncan v Louisiana, 391 US 145, 148-149 [1968]). Thus, a court may not simply intrude on the jury and begin questioning a member or members thereof unless there is some credible information indicating that a juror may have made a comment or taken an action that raises a question regarding that juror’s ability to be impartial. Here, we agree with the court that no such credible information was presented and that no personal inquiry of the jurors at issue was necessary or proper.
*1623 It is well settled that “a determination of whether an inquiry by the court is warranted should be based on the unique facts of each case” (People v Paulino, 131 AD3d 65, 72 [2015], lv denied 26 NY3d 1042 [2015], reconsideration denied 27 NY3d 1004 [2016]). As the majority notes, this issue arose when a spectator apparently told defense counsel that a juror made an inappropriate statement to another juror while court was not in session. Defense counsel asked to approach the bench after summations, and then the court directed the spectator to take the witness stand and be sworn. The spectator testified that she observed two jurors talking to each other while smoking outside the courthouse, and that one of them stated that defendant was a “scumbag.” The spectator also testified that she noticed that those same jurors “were in the back row laughing and making faces” during the trial proceedings. The spectator initially stated that she merely walked past the jurors when she overheard that remark because she did not want to get involved, and that it had happened the day before she testified, after court. Upon further questioning by the court and counsel, however, the spectator repeatedly stated that the incident occurred while the court was taking a break. The record establishes, however, that the court did not take a break on the day the spectator said she overheard the conversation. Rather the court conducted proceedings without a break in the morning, and then the jury was sent home for the day at about lunchtime. The spectator also stated that she overheard the conversation at issue immediately after she was ejected from the courthouse, and she was not permitted to reenter the courthouse to inform defense counsel. Conversely, she also stated that she was ejected because she was telling her friend about this incident and saying that it was not right. In addition, she testified that she overheard the conversation when she “stopped and listened for a minute,” but seconds earlier she had testified that she and the friend “were going to stop and smoke a cigarette but [they] kept going because [they] didn’t want to be involved.” Finally, the prosecutor in questioning the spectator stated, without objection, that defense counsel had said that the spectator was defendant’s girlfriend, but the spectator testified that she was merely a family friend, despite also admitting that she had visited defendant in jail.
At the conclusion of the spectator’s testimony, defense counsel asked the court to conduct an inquiry of the jurors, and the prosecutor contended that no further inquiry was warranted based on the spectator’s information. The prosecutor further stated that he thought “the Court should make a ruling as to whether [it] find[s] this description credible first.” The *1624 court replied: “I don’t - - I don’t believe that an inquiry of the juror is necessary or appropriate here . . . [b]ased on what I heard.”
In this case, the “[c]ourt chose to begin its in camera interrogation not with the jurors themselves, but rather with the witness [,] [i.e., the spectator,] in an effort to first ascertain exactly what that witness had seen and heard. This being the least disruptive method of initially ascertaining the particulars, we see no error in this mode of proceeding” (People v Matiash, 197 AD2d 794, 796 [1993], lv denied 82 NY2d 899 [1993]). We further conclude that the court, by stating that it was basing its ruling on what it had heard, determined that the spectator’s testimony was not sufficiently credible to warrant disrupting the normal trial procedure or further inquiring into the actions of the two jurors in question.
The record fully supports that determination. The spectator’s testimony was riddled with inconsistencies, and it did not comport with the chronology of the proceedings in court as they are reflected in the record. Additionally, the prosecutor noted without objection that the spectator had previously informed defense counsel that she was defendant’s girlfriend, yet she denied such a relationship while testifying. Finally, the spectator testified about actions that the subject jurors allegedly took during the proceedings, and thus the court had the ability to assess the credibility of the spectator by comparing her account to events that the court itself had observed. It is clear that the court was closely observing the jury throughout the proceedings, as demonstrated by the fact that the court previously noted that a juror had fallen asleep, and that another juror was tired but paying attention. Consequently, the court, having a full opportunity to observe the spectator while she was testifying and judge her demeanor, and having the ability to assess her credibility against known facts, properly concluded that her testimony was not credible. It is well settled that a hearing court’s credibility determinations are entitled to deference due to its ability to carefully evaluate the answers and demeanor of witnesses (see generally People v Harris, 288 AD2d 610, 616 [2001], affd 99 NY2d 202 [2002]; People v Chatt, 77 AD3d 1285, 1286 [2010], lv denied 17 NY3d 793 [2011]). Here, especially in light of the significant evidence in the record supporting the court’s determination not to credit the testimony of the spectator, we see no reason to disturb that determination. Consequently, inasmuch as there is no credible evidence indicating that any juror engaged in misconduct, there was no need for a further inquiry of the individual jurors.
Pres *1625 ent—Smith, J.P., Peradotto, DeJoseph, Troutman and Scudder, JJ.